# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

   **Plaintiff,**

         **Case No. 10-20403**
         **Hon. Nancy G. Edmunds**

**v.**

**D-2 BOBBY FERGUSON,**

   **Defendant.**

_____

## DEFENDANT'S MOTION TO REDUCE SENTENCE
## PURSUANT TO 18 U.S.C. § 3582 (c)(1)(A)(i)

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Defendant, BOBBY FERGUSON, through his counsel, respectfully moves this Honorable Court for an Order reducing his sentence based on "extraordinary and compelling reasons." The legal and factual arguments in support of the relief requested are more fully set forth in the attached Brief in Support.

The Government does not concur in this Motion.

      Respectfully submitted,

      /s/*Gerald K. Evelyn*
      GERALD K. EVELYN (P29182)
      ROBERT E. HIGBEE (P82739)
      Counsel for Defendant
      535 Griswold, Suite 1000
      Detroit, MI 48226
      (313) 962-3500

*/s/ Michael A. Rataj*
MICHAEL A. RATAJ (P43004)
Co-Counsel for Defendant
500 Griswold, Suite 2450
Detroit, MI 48226
(313) 963-4529

Dated:  March 30, 2021

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

                    **Case No. 10-20403**
                    **Hon. Nancy G. Edmunds**

**v.**

**D-2 BOBBY FERGUSON,**

        **Defendant.**

_____

**BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION TO REDUCE SENTENCE**
**<u>PURSUANT TO 18 U.S.C. § 3582 (c)(1)(A)(i)</u>**

# TABLE OF CONTENTS

**Page**

ISSUE PRESENTED ………………………………………………… iii

CONTROLLING AUTHORITIES ………………………………… iv

I.   INTRODUCTION ………………………………………… 1

II.   RELEVANT FACTS ……………………………………… 2

    A.   Mr. Ferguson's Medical Conditions ……………………… 2

    B.   Procedural History ……………………… …………… 2

    C.   Kwame Kilpatrick's Grant of Clemency ………………… 3

III.   THE COURT HAS THE UNFETTERED DISCRETION TO
DETERMINE WHAT CONSTITUTES "EXTRAORDINARY
AND COMPELLING REASONS" FOR COMPASSIONATE
RELEASE MOTIONS………………………………………… 4

IV.   ARGUMENT ……………………………………………… 7

    A.   Mr. Ferguson Has Exhausted His Administrative
Remedies ……………………………………………… 7

    B.   Mr. Ferguson's Documented Medical Conditions
Constitute Extraordinary and Compelling Reasons
To Grant the Relief Requested ………………………… 7

    C.   The Commutation of Co-Defendant Kwame Kilpatrick's
Sentence Constitutes Extraordinary and Compelling
Reasons to Grant Mr. Ferguson the Relief Requested …… 13

V.   THE RELEVANT FACTORS PURSUANT TO 18 U.S.C.
§ 3553(a) WEIGH IN MR. FERGUSON'S FAVOR…………… 15

|  | A. | Seriousness of the Offense, Respect for the Law And Just Punishment …………………………………… | 15 |
|---|---|---|---|
|  | B. | The Need to Avoid Sentencing Disparities Pursuant to U.S.C. § 3553(a)(6) ………………………………… | 18 |
| VI. |  | CONCLUSION AND RELIEF REQUESTED………………… | 20 |

## <u>ISSUE PRESENTED</u>

WHETHER MR. FERGUSON IS ENTITLED TO COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i).

Defendant answers:      Yes
Government answers:      No

## <u>CONTROLLING AUTHORITIES</u>

18 U.S.C. § 3582(c)(1)(A)(i); 18 U.S.C. § 3553(a); *United States v.* Jones, 980 F.3d 1098 (6th Cir. 2020); *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021); and *United States v. McDonel*, No. 07-cr-20189, 2021 WL 120935 (E.D. Mich. January 13, 2021, Lawson, J.)

## I.   INTRODUCTION

Bobby Ferguson respectfully submits this Motion for Compassionate Release Pursuant to 18 U.S.C. §3582 (c)(1)A)(i), as amended by Section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239, which permits a court to reduce a sentence for "extraordinary and compelling reasons." In light of recent Sixth Circuit authority, this Honorable Court is now empowered, on its own initiative, to independently determine what constitutes "extraordinary and compelling reasons," warranting compassionate release.

Mr. Ferguson's sentence was too long as compared with his co-defendant, Kwame Kilpatrick, and with other defendants convicted of similar crimes.  Indeed, the commutation of Mr. Kilpatrick's sentence by the Executive Branch, from 28 years to 8 years, amplifies the "extraordinary and compelling reasons" to grant Mr. Ferguson's Motion for Compassionate Release. Additionally, consideration of the relevant factors set for in 18 U.S.C.  §3553(a) weigh heavily in Mr. Ferguson's favor.

Mr. Ferguson suffers from significant medical conditions that increase his risk while being incarcerated during the COVID-19 pandemic.  In addition, Mr. Ferguson has been a model prisoner and his release would not pose a danger to the community. Again, the fact that Mr. Kilpatrick is now a free man and Mr. Ferguson still has to serve 10 more years is a sentencing disparity (created entirely by the Executive) that cannot be countenanced by this Honorable Court. Constitutional precepts of

1

fundamental fairness and justice for all mandates Mr. Ferguson's compassionate release.

## II.   RELEVANT FACTS

### A.   Mr. Ferguson's Medical Conditions

Mr. Ferguson has several significant health conditions that heighten his risk if exposed to COVID-19.  As of March 25, 2021, FCI Elkton has 31 active cases of COVID-19, which is consistent with the national uptick in COVID-19 cases in the last month.  Mr. Ferguson is currently prescribed Lisinopril and Hyrdochlorothiazide for Hypertension, and Atorvastatin for High Cholesterol.  (Exhibit 1).  In addition, Mr. Ferguson suffers from Chronic Lung Disease since a partial pneumonectomy performed in 1998 after he was shot in the chest, which resulted in a decrease in Mr. Ferguson's lung capacity to 65 percent.  Id.  These conditions, together and apart, significantly increase Mr. Ferguson's risk for lethal effects should he be exposed to COVID-19.  Given that COVID-19 is again on the rise in the United States, and at FCI Elkton, Mr. Ferguson's health conditions warrant the relief requested herein.

### B.   Procedural History

This Honorable Court is well aware of the facts of the case. The Court is also cognizant of the fact that the trial in this matter was unquestionably the most highly publicized trial that this region of the State ever experienced. Moreover, the case received national interest and attention.

Mr. Ferguson was found guilty of Counts 1, 2, 3, 4, 5, 7, 8, 9 and 17 of the Fourth Superseding Indictment. Mr. Ferguson received a sentence of 240 months for Counts 1, 2, 3, 4, 5, 7, 8 and 9, each count to run concurrently. As to Count 17, Mr. Ferguson received a sentence of 12 months to run consecutively with all of the other counts. Accordingly, Mr. Ferguson received a sentence of 252 months or 21 years. (Exhibit 2).  Mr. Ferguson's release date is January 29, 2031, or just under 10 years. Mr. Ferguson is currently housed at FCI Elkton in Ohio.

The jury found Mr. Kilpatrick guilty as to Counts 1, 2, 3, 4, 5, 9, 17, 18 through 26, 28, 30, 31 through 36 of the Fourth Superseding Indictment. As to Counts 1, 2, 3, 4, 5 and 9, Mr. Kilpatrick was sentenced to 240 months on each count, to run concurrently.  On Count 17, Mr. Kilpatrick was sentenced to 120 months to run concurrently with Counts 1, 2, 3, 4, 5 and 9. As to Counts 18 through 26, 28 and 30, the Court sentenced Mr. Kilpatrick to 84 months on each count to run concurrently with each other, and consecutive to Counts 1, 2, 3, 4, 5, 9 and 17. Lastly, as to Counts 31 through 36, Mr. Kilpatrick was sentenced to 12 months on each count, to run concurrent with each other and consecutive to all the other counts. In total, Mr. Kilpatrick was sentenced to 336 months or 28 years. (Exhibit 3).

## C.  Kwame Kilpatrick's Grant of Clemency

On January 13, 2021, former President Donald J. Trump signed the Executive Grant of Clemency for Mr. Kilpatrick. The Executive Order states that "it has been

made to appear that the ends of justice do not require the said **KWAME MALIK KILPATRICK TO REMAIN CONFINED** until his currently projected release date of January 18, 2037, **AND THE SAFETY OF THE COMMUNITY WILL NOT BE COMPROMISED IF HE IS RELEASED**. (Exhibit 4). Accordingly, when Mr. Kilpatrick's sentence was commuted, he still had 16 years to serve on his sentence.

## III. THE COURT HAS THE UNFETTERED DISCRETION TO DETERMINE WHAT CONSTITUTES "EXTRAORDINARY AND COMPELLING REASONS" FOR COMPASSIONATE RELEASE MOTIONS

The general proposition regarding sentencing is that "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020); 18 U.S.C. § 3582(c). However, the First Step Act, 18 U.S.C. § 3582(c), provides an exception to this general proposition. The statute permits reductions in sentences pursuant to the "compassionate release" provision.

18 U.S.C. § 3582(c)(1)(A)(i) provides:

"**(c) Modification of an imposed term of imprisonment. - -** The court may not modify a term of imprisonment once it has been imposed except that - -

**(1)** in any case - -

**(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has   fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of

4

such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that - -

> **(i)** Extraordinary and compelling reasons warrant such a reduction;
>
>          * * *
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; . . . "

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), a district court has the ability to order a reduction of a sentence, even to time served. In *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020), the Sixth Circuit set forth a three-pronged analysis in determining whether to reduce a sentence:

1. Consider whether "extraordinary and compelling reasons warrant such a reduction."

2. Determine whether the "reduction is consistent with applicable policy statements issued by the sentencing commission."

3. Consider the "factors set forth in [18 U.S.C. § 3582(a)] to the extent they are applicable."

*Id.* See also, *United States v. McDonel,* ___ F.Supp. 3d ___, No. 07-cr-20189, 2021 WL 120935 (E.D. Mich. January 13, 2021, Lawson, J.).

Under the second prong, the Sentencing Commission's Policy Statement is found at U.S.S.G. § 1B.1.13, which is a recitation of 18 U.S.C. § 3582(c). It is well

accepted that the Sentencing Commission's policy statement does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019), reconsideration denied, 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force – it serves only to interpret the Guideline's text, not to replace or modify it"); See also, *United States v. McDonel, supra*.

In *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020), the Sixth Circuit joined the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered U.S.S.G § 1B1.13 inapplicable to those cases where a prisoner files a motion for compassionate release. *United States v. Brooker*, 976 F.3d 228, 234 (2nd Cir. 2020).

In January, 2021, the Sixth Circuit went even further. In *United States v. Elias*, ___ F.3d ___, No. 20-cr-3654 2021 WL 50169 (6th Cir. January 6, 2021) the Sixth Circuit reaffirmed the holding in *Jones, supra*, "that § 1.B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates and so district courts need not consider it when ruling on those motions." *Id.  Elias, supra*. The Sixth Circuit concluded that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Id.*; *McDonel, supra*.

In light of *Jones* and *Elias*, this Court now has the unfettered discretion to make its own determination as to what constitutes "extraordinary and compelling reasons" for purposes of deciding a motion for compassionate release. The Sentencing Commission's policy statement per U.S.S.G. § 1B1.13 is no longer to be considered.

## IV.   ARGUMENT

### A. Mr. Ferguson Has Exhausted His Administrative Remedies

Mr. Ferguson exhausted his administrative remedy within the BOP by submitting a written request to the Warden at FCI-Elkton for a reduction in his sentence pursuant to 18. U.S.C. § 3582(c)(1)(A). On April 30, 2020, the Warden at FCI-Elkton, Mark E. Williams, denied Mr. Ferguson's request. (Exhibit 5). Mr. Ferguson has waited the requisite 30 days before filing the instant motion before this Honorable Court. *See, United States v. Alam*, *supra*.

### B. Mr. Ferguson's documented medical conditions constitute extraordinary and compelling reasons to grant the relief requested.

"Extraordinary" is defined as "going beyond what is usual, regular, or customary; or exception to a very marked extent," *Merriam-Webster Dictionary* (2019), available at https://www.merriam-webster.com/dictionary/extraordinary; and "compelling" is defined as "forceful; demanding attention; convincing," available at https://www.merriamwebster.com/dictionary/compelling. A sense of how those definitions apply in context can be found in the Senate Report that accompanied the Sentencing

Reform Act, where Congress indicated that sentence modifications would be appropriate in "cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of ***an unusually long sentence***, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment." S. Rep. No. 98-225, at 55-56 (1984) (emphasis added).

As discussed above, Mr. Ferguson has significant health issues, including reduced lung function after having been shot in the chest, hypertension, and high cholesterol, all of which place him at significant risk while being incarcerated during the COVID-19 pandemic. (Exhibit 1). Oftentimes relying on these very health conditions, judges in districts throughout the United States have recognized that, at least for certain defendants, COVID-19 presents "extraordinary and compelling reasons" warranting a reduction in sentence under the compassionate release statute. A non-exhaustive list includes:

- *United States v. Hansen*, No. 17-cr-50062, 2020 WL 2219068 (N.D. Ill. May 7, 2020) ("[T]he Court cannot discount the risk to Hansen if he contracts coronavirus, as reliable information places him in a higher-risk category. Specifically, the presentence report documents that he suffers from diabetes, hypertension, high cholesterol, kidney disease, and chronic obstructive pulmonary disease, all of which are confirmed risk factors for serious illness if one contracts coronavirus.")

- *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (shortening 60-month sentence after only 21 months because Amarrah's "Type II diabetes, hypertensive heart disease, cardiac arrhythmia,

obstructive sleep apnea, and asthma" put him a substantial risk should he contract COVID-19 even though facility had no reported cases);

- *United States v. Howard*, No. 4:15-cr-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020) (finding 52-year-old with "chronic obstructive pulmonary disease ('COPD'), Type II diabetes, obesity, Stage 3 kidney disease, edema, open wounds on his legs, and a diaphragmatic hernia" demonstrated extraordinary and compelling circumstances due to COVID-19 even though his conditions neither constituted terminal illness nor prevented him from engaging in most of his daily activities without assistance);

- *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at *3 (E.D. Va. May 6, 2020)("The Court finds that Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the great risk that COVID-19 poses to a person of his age with underlying health conditions.");

- *United States v. Quintero*, No. 08-cr-6007L, 2020 WL 2175171 (W.D.N.Y. May 6, 2020) (granting compassionate release to man who "suffers from diabetes, a compromised immune system, obesity, and hypertension," "which make him more susceptible than another to contract the virus.");

- *United States v. Reid*, No. 17-cr-00175-CRB-2, 2020 WL 2128855 (N.D. Cal. May 5, 2020) (granting compassionate release based on risks COVID-19 presents to individual with hypertension, high cholesterol, and Valley Fever, which causes lung infection and can result in acute pneumonia);

- *United States v. Pabon*, No. 17-165-1, 2020 WL 2112265, at *1 (D Mass. May 4, 2020) (holding that for the 54-year-old defendant who suffers from "diabetes, hypertension, hemophilia, atopic dermatitis, gastroesophageal reflux disease, peptic ulcer, and diverticulitis" "nothing could be more extraordinary and compelling than this pandemic");

- *United States v. Echevarria,* No. 3:17-cr-44, 2020 WL 2113604 (D. Conn. May 4, 2020) (finding 49-year-old with pre-existing respiratory condition— a history of bronchial asthma—combined with the increased risk of COVID-19 in prisons had demonstrated extraordinary and compelling reasons for relief);

- *United States v. Early*, No. 09-cr-282, 2020 WL 2112371, at *2 (N.D. Ill. May 4, 2020) ("the Court cannot discount the risk to Mr. Early if he contracts

9

coronavirus, as reliable information places him in a higher-risk category [62, diabetes and hypertension].   This, in the Court's view, qualifies as an extraordinary reason warranting consideration of a reduction of Mr. Early's sentence.");

- *United States v. Ardila,* No. 3:03-cr-264, 2020 WL 2097736, at *2 (D Conn. May 1, 2020) (finding 71-year-old's medical conditions (diabetes, cardiovascular disease, hypertension, asthma, and obesity) and "current conditions of confinement constitute extraordinary and compelling reasons to reduce his sentence");

- *United States v. Soto*, No. 1:18-cr-10086, 2020 WL 2104787 (D. Mass. May 1, 2020) (finding inmate with hypertension at facility with COVID-19 cases located in New York had shown extraordinary and compelling reasons for relief);

- *United States v. Kelly*, No. 3:13-cr-59, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (granting compassionate release to young man without health issues at Oakdale I because "it has become increasingly apparent that the BOP has failed to control the outbreak at Oakdale I. … Given the steadily growing death toll and the apparent continued spread of the disease at Oakdale I, COVID-19 creates an 'extraordinary and compelling reason' potentially warranting a reduced sentence.");

- *United States v. Norris*, No. 7:19-cr-36, 2020 WL 2110640 (E.D.N.C. Apr. 30, 2020) (finding defendant had demonstrated extraordinary and compelling circumstances for relief because he "suffers from various severe ailments," including a life-threatening disease, kidney failure requiring dialysis three times a week, and recurrent bouts of pneumonia, "that cumulatively make his continued confinement especially dangerous in light of COVID-19.")

- *United States v. Robinson*, No. 18-cr-00597, __ F. Supp.3d __, 2020 WL 1982872 (N.D. Calif. Apr. 27, 2020) (granting compassionate release to prisoner at FCI Lompoc who suffers from severe psoriasis for which he takes immunosuppressant medication);

- *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296 (C.D. Ill. Apr. 24, 2020) (granting compassionate release to inmate who had served 19 years of 24-year sentence based on his vulnerability to COVID-19 because of

hypertension, prostate issues, bladder issues, and a dental infection and because he is prediabetic);

- *United States v. Gorai*, No. 2:18-cr-220, 2020 WL 1975372 (D. Nev. Apr. 24, 2020) (granting compassionate release in light of COVID-19 to inmate who suffers from asthma);

- *United States v. Joling*, No. 11-cr-60131, 2020 WL 1903280 (D. Ore. Apr. 17, 2020) (granting compassionate release to inmate at Butner in light of COVID-19 and his underlying conditions, including "hypertension, atherosclerosis, a history of transient ischemic attacks, dyslipidemia, obesity, history of left lower extremity fracture" and diagnosis of "prostatic adenocarcinoma");

- *United States v. Samy*, Case No. 16-20610, 2020 WL 1888842 (E.D. Mich. Apr. 16, 2020) (granting compassionate release because "Samy squarely fits the definition of an individual who has a higher risk of dying or falling severely ill from COVID-19" because of her age and underlying medical conditions, including a serious heart condition, diabetes and asthma);

- *United States v. Smith*, No. 12-cr-133, 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020) (granting immediate release for individual with asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma in light of presence of COVID-19 at place of imprisonment);

- *United States v. Tran*, No. 08-0197, ECF No. 402 (C.D. Calif. Apr. 10, 2020) (finding defendant's asthma given the outbreak at FCI Oakdale "presents an extraordinary and compelling reason for compassionate release");

- *United States v. Burrill*, No. 17-cr-0491, ECF No. 308 (N.D. Calif. Apr. 10, 2020) (granting compassionate release because defendant, 75, "suffers from asthma, high blood pressure, high cholesterol, diabetes, diverticulosis, blood clots, hearing loss, glaucoma, cataracts, and lower back nerve pain," placing him at a "heightened risk of becoming severely ill from COVID-19");

- *United States v. Rodriguez*, No. 2:03-cr-00271, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 10, 2020) ("Mr. Rodriguez's circumstances—particularly the outbreak of COVID-19 and his underlying medical conditions that place him at a high risk should he contract the disease—present 'extraordinary and compelling reasons' to reduce his sentence.");

11

- *United States v. Miller*, No. 16-cr-20222, 2020 WL 1814084, at *4 (E.D. Mich. Apr. 9, 2020) ("Miller squarely fits the definition of an individual who has a higher risk of falling severely ill from COVID-19. . . . Therefore, the Court finds that extraordinary and compelling reasons exist for his immediate compassionate release.");

- *United States v. Zukerman*, No. 16-cr-194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) ("The Court also finds that Zukerman has set forth 'extraordinary and compelling reasons' to modify his sentence, 18 U.S.C. § 3582(c)(1)(A)(i), because of the great risk that COVID-19 poses to an elderly person with underlying health problems.");

- *United States v. Colvin*, No. 3:19-cr-179, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (citing COVID-19 and defendant's medical conditions and "conclud[ing] that Defendant has demonstrated extraordinary and compelling reasons justifying her immediate release");

- *United States v. Edwards*, No. 6:17-cr-00003, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020) (concluding defendant "has demonstrated an extraordinary and compelling reason for his compassionate release" in light of COVID-19 and preexisting health conditions);

- *United States v. Perez*, No. 17-cr-0513, ECF No. 98 (S.D.N.Y. Apr. 1, 2020) (finding defendant's pre-existing medical condition combined with the risk of contracting COVID-19 at MDC Brooklyn constitutes "extraordinary and compelling reasons" to reduce his sentence to time served);

- *United States v. Gonzalez*, No. 2:18-cr-0232, 2020 WL 1536155, at *3 (E.D. Wash. Mar. 31, 2020) (granting compassionate release because COVID-19 and defendant's medical conditions constitute "extraordinary and compelling reasons");

- *United States v. Muniz*, No. 4:09-cr-0199, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020) ("Because Defendant is at high-risk for severe illness from COVID-19 and because inmates in detention facilities are particularly vulnerable to infection, the Court finds that Defendant has demonstrated an extraordinary and compelling reason for compassionate release.");

- *United States v. Trent*, No. 16-cr-00178, 2020 WL 1812242, at *2 (N.D. Cal.

12

Apr. 9, 2020) (finding "extraordinary and compelling reasons" based on combination of "COVID-19 pandemic" and defendant's "medical conditions");

- *United States v. Hansen*, No. 07-CR-00520, 2020 WL 1703672, at *8-9 (E.D.N.Y. Apr. 8, 2020) (granting compassionate release in light of "the unique risks posed by the COVID-19 pandemic to prisoners like Mr. Hansen, who is elderly and infirm").

Here, Mr. Ferguson's medical conditions warrant granting compassionate release, given the significant risk he faces should he contract COVID-19.

### C. The Commutation of Co-Defendant Kwame Kilpatrick's Sentence Constitutes Extraordinary and Compelling Reasons to Grant Mr. Ferguson the Relief Requested

Mr. Ferguson's sentence was unusually long (almost 12 times the average bribery or extortion sentence). What makes Mr. Ferguson's current situation extraordinary and compelling is that it was the Executive Branch (which includes the Department of Justice) that partially created this gross sentencing disparity. Fundamental to this country's sentencing framework is that sentencing disparities are to be guarded against and avoided. To allow Mr. Ferguson to remain in prison for 10 more years while Mr. Kilpatrick is now tasting the fruits of freedom turns sentencing equities and justice on its head. Indeed, not only is Mr. Ferguson's sentence disparate externally with respect to defendants who were convicted of similar offenses, now it is disparate internally with his co-defendant, Mr. Kilpatrick. It is this internal disparity that is especially compelling, given that it is the easiest to remedy.

The jury determined that Mr. Kilpatrick was the leader of the criminal enterprise being operated out of his Mayor's office. Mr. Kilpatrick was a public official who took an oath of office to act in the best interests of the citizens of Detroit. To be sure, the jury found that Mr. Kilpatrick violated that oath and used his office to benefit himself and to benefit his family and friends. This Court was obviously offended by Mr. Kilpatrick's conduct and meted out a sentence that was longer than any sentence that any public official ever received for similar crimes.

Mr. Ferguson was not a public official. He never took an oath of office. Mr. Ferguson was a successful African American contractor that had employees, equipment, and a track record of performing quality work. Mr. Ferguson was found guilty of using his relationship with Mr. Kilpatrick to illegally obtain contracts for work that he might never have received. For his crimes, Mr. Ferguson received the longest sentence that any non-public official received in a public corruption case.

As a result, Mr. Ferguson's current release date is January 29, 2031. The fact that Mr. Kilpatrick is now a free man (with 16 years remaining on his sentence) and Mr. Ferguson must still serve 10 more years, undoubtedly constitutes extraordinary and compelling reasons to grant Mr. Ferguson compassionate release, in light of the already-disparate nature of his sentence as compared with other defendants convicted of similar crimes. To be sure, equal treatment under law, fundamental fairness and the interests of justice cry out for a commutation of Mr. Ferguson's

14

sentence pursuant to the compassionate release statute.

## V.   THE RELEVANT FACTORS PURSUANT TO 18 U.S.C. § 3553(a) WEIGH IN MR. FERGUSON'S FAVOR

Mr. Ferguson respectfully submits that he has made a substantial showing of extraordinary and compelling circumstances. Thus, the Court must then consider the relevant factors set forth in 18 U.S.C. § 3553(a). These factors weigh in favor of Mr. Ferguson.

In considering a request for a sentence reduction, the court must account for "the seriousness of the offense," the need "to promote respect for the law" and "afford adequate deterrence to criminal conduct. As Judge Lawson held in *McDonel, supra*, "[t]hese factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction." *McDonel, supra*.

### A. Seriousness of the Offense, Respect for the Law and Just Punishment

Mr. Ferguson acknowledges and takes no issue with the fact that there are consequences for bad choices. Mr. Ferguson is remorseful for his actions. He understands that his crimes were serious and that he had to pay his debt to society.

However, a sentence that is excessive in light of the seriousness of the offense promotes disrespect for the law and provides unjust punishment. In August, 2003, Justice Anthony Kennedy gave a speech at the ABA Annual Meeting in San Francisco where he stated:

> Our resources are misspent, our punishments too severe; our
> sentences too long . . . the sentencing guidelines are responsible
> in part for the increased terms. . . [and they] should be revised
> downward.

On February 14, 2007, Justice Kennedy again addressed this issue when he

testified before the Senate Judiciary Committee:

> Our sentences are too long, our sentences our too severe; our
> sentences are too harsh . . . there is no compassion in the system.
> There's no mercy in the system.

In *United States v. Bannister*, 786 F. Supp. 2d 617 (E.D.N.Y. 2011), the Court

addressed the length of the prison sentences in the United States:

> The increased prison population is due in large part to longer
> sentences. For the same crimes, American prisoners receive
> sentences twice as long as English prisoners, three times as long
> as Canadian prisoners, four times as long as Swedish prisoners.
> Yet these countries' rates of violent crime are lower than ours,
> and their rates of property are comparable.

A host of other penalties and burdens always attend criminal convictions,

including (1) losses of family life, socioeconomic status, employment and career

opportunities; (2) diminution of certain civil rights and entitlements; and (3)

countless humiliations and indignities commonly associated with a conviction. Mr.

Ferguson has experienced all of these collateral consequences as a result of his

conviction and incarceration.

During the 8 years of his incarceration, Mr. Ferguson has been a model

prisoner. Mr. Ferguson has not received any disciplinary tickets. Mr. Ferguson has

been employed his entire term of incarceration and he has taken advantage of all types of educational opportunities. Most importantly, Mr. Ferguson has taken measures where he has mentored other inmates to prepare for a better future.

For the first four years of his prison term, Mr. Ferguson was housed at FCI Williamsburg in South Carolina. Mr. Ferguson worked in general maintenance for the entire institution. Mr. Ferguson has spent the last four years at FCI Elkton in Ohio. Initially, Mr. Ferguson was employed as the No. 2 Maintenance Orderly for the prison chapel. Currently, Mr. Ferguson is the No. 1 Maintenance Orderly and supervises a team of 30 inmates.

Mr. Ferguson has logged hundreds of hours in educational courses. The classes include, but are not limited to, African American History, Computer Skills Improvement, Drug Education, HIV/AIDS Awareness, Parenting Skills, Creative Writing, Music Classes, Stress Management and Anger Management. (Exhibit 6).

During his time at FCI Elkton, Mr. Ferguson has taught a mentoring class called "Challenge 2 Change." Prior to becoming a mentor, Mr. Ferguson completed a 26-week Release Preparation Program. The mentoring program that Mr. Ferguson leads, teaches inmates "Soft Skills: Positive Relationship Building, Parenting While Incarcerated, Time Management, Cognitive Skills. Life Skills: Financial Management & Budgeting, Credit Building and Repair, Small Business Planning and Business Structure. Working Class Skills: Resume and Cover Letter Building,

Job Search, Employment Preparedness & Interviewing Skills." (Exhibit 7).

Mr. Ferguson has strong family support from his wife and 5 adult children. Upon his release, Mr. Ferguson will reside with his wife. In short, Mr. Ferguson is determined and dedicated to being a good husband and to be intimately involved in the lives of his children. Mr. Ferguson is also determined to become a positive influence and mentor to others in the underserved community.

Despite his transgressions and his public persona, Mr. Ferguson has always been a deeply spiritual individual. Prior to his incarceration, Mr. Ferguson always attended church and read his Bible daily. During his 8 years of incarceration, Mr. Ferguson has continued his spiritual journey which has given him the strength and intestinal fortitude to make the best of his current set of circumstances.

## B. The Need to Avoid Sentencing Disparities Pursuant to 18 U.S.C. § 3553(a)(6)

As stated above, the Executive Branch has created a gross internal disparity in the sentence of Mr. Ferguson through Mr. Kilpatrick's commutation. To be sure, the Executive Branch created sentencing disparity constitutes extraordinary and compelling reasons for the requested sentence reduction.

Moreover, this disparity between Mr. Ferguson and Mr. Kilpatrick also applies to this sentencing factor, which charges the Court to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6); see also, *United States v. Cantu-Rivera*, No.

CR H-89-204, 2019 WL 2578272, at *2 (S.D. Tex., June 24, 2019) (finding a reduced sentence would "also avoid unwarranted disparities among defendants with similar records convicted of similar conduct.")

The Sentencing Commission's 2019 Annual Report highlights how Mr. Ferguson's sentence is externally disparate as compared to other sentences for other crimes. By way of example, the average sentence for bribery/corruption convictions is 22 months. The average sentence for extortion/racketeering convictions is 32 months. Additionally, Mr. Ferguson's sentence was significantly greater than the average child pornography sentence of 103 months, the average kidnapping sentence of 171 months, the average robbery sentence of 109 months, and the average sentence for sexual abuse of 205 months. Only the average sentence for murder of 255 months exceeds Mr. Ferguson's sentence of 252 months. (Exhibit 8).

Mr. Ferguson's sentence was 11.45 times greater than the average bribery/corruption sentence and 7.88 times greater than the average extortion/racketeering sentence. There is no question that Mr. Ferguson's sentence is incredibly disparate from sentences for similar crimes. This disparity clearly runs afoul of the need to avoid sentencing disparities.

Thus, the combination of the internal and external sentencing disparities compels Mr. Ferguson's compassionate release.  It is patently unfair for Mr. Ferguson to serve a sentence that is 3 times longer than Mr. Kilpatrick's when the

Court intended for him to serve a sentence that was only .75 of Mr. Kilpatrick's sentence.  Even then, Mr. Ferguson's sentence is grossly disparate as compared with defendants convicted of similar crimes.

## VI.   **CONCLUSION AND RELIEF REQUESTED**

Mr. Ferguson suffers from significant health conditions (hypertension, high cholesterol, and diminished lung capacity) that greatly increase his risk to exposure from COVID-19.  In addition, Mr. Ferguson's sentence was too long as compared with other defendants around the country, and it is now too long as compared with his co-defendant, Mr. Kilpatrick.  The Court has the power to change Mr. Ferguson's sentence.  The Court should reduce Mr. Ferguson's prison term to time served, and impose reasonable conditions upon his release.

<div style="margin-left:40%">

Respectfully submitted,

*s/Gerald K. Evelyn*
GERALD K. EVELYN (P29182)
ROBERT E. HIGBEE (P82739)
Counsel for Defendant
535 Griswold, Suite 1000
Detroit, MI 48226
(313) 962-3500

*s/Michael A. Rataj*
MICHAEL A. RATAJ (P43004)
Co-counsel for Defendant
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529

</div>

Dated:  March 29, 2021

## <u>CERTIFICATE OF SERVICE</u>

Michael A. Rataj hereby states that on March 29, 2021, I electronically filed *Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582 (c)(1)(A)(i) and Certificate of Service* with the Clerk of the Court using the ECF system which will send notification of such to the United States Attorney's office.

<u>s/Michael A. Rataj</u>
Michael A. Rataj