UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BOBBY W. FERGUSON (D-2),

    Defendant.

_____/

Case No. 10-20403

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE [674]**

Defendant Bobby W. Ferguson is currently in the custody of the Federal Bureau of Prisons ("BOP") at the Federal Correctional Institution Elkton in Lisbon, Ohio. The matter is before the Court on Defendant's motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF No. 674.) The government opposes the motion. (ECF Nos. 679, 680.) Defendant has filed a reply. (ECF No. 681.) The Court has reviewed the record in its entirety and finds that a hearing is not necessary. For the reasons set forth below, the Court GRANTS Defendant's motion.

**I.    Background**

On March 11, 2013, a jury found Defendant guilty of nine of the eleven counts he was charged with: one count of RICO conspiracy, 18 U.S.C. § 1962(d); six counts of extortion, 18 U.S.C. § 1951; one count of attempted extortion, 18 U.S.C. § 1951; and one count of bribery, 18 U.S.C. § 666(a). (ECF No. 277.) The Court sentenced Defendant to be imprisoned for a term of 252 months. (ECF No. 519.) Defendant was also ordered to pay restitution to the Detroit Water & Sewerage Department in the amount of

1

$6,284,000.00. (*Id.* at PgID 16479.) The Sixth Circuit affirmed, and the Supreme Court denied Defendant's petition for a writ of certiorari. (ECF Nos. 570, 575.) This Court later denied Defendant's motion to vacate his sentence under 28 U.S.C. § 2255. (ECF No. 624.) Defendant is currently 52 years old and his projected release date is January 29, 2031.

Also on March 11, 2013, Defendant's co-defendant, former Detroit Mayor Kwame M. Kilpatrick, was found guilty of twenty-four of the thirty counts he was charged with. (ECF No. 277.) The Court sentenced Mr. Kilpatrick to be imprisoned for a term of 336 months. (ECF No. 516.) On January 13, 2021, Mr. Kilpatrick was granted clemency by the President of the United States and his sentence was commuted to time served. (ECF No. 673.) At the time, his projected release date was January 18, 2037. (*Id.*)

On April 4, 2020, Defendant submitted an administrative request for his release to the warden at FCI Elkton based on his health concerns associated with the COVID-19 pandemic. (ECF No. 679-3.) That request was denied on April 30, 2020. (ECF No. 674-6.) Defendant now moves this Court for compassionate release based on 1) an increased vulnerability to COVID-19 due to his hypertension, high cholesterol, and diminished lung capacity, and 2) the sentence disparity that has resulted from the commutation of the sentence of Mr. Kilpatrick. Defendant states he has strong support from his wife and five adult children and will reside with his wife if he is released.

II.   **Analysis**

The compassionate release provision set forth in § 3582(c)(1)(A) allows district courts to reduce a term of imprisonment for "extraordinary and compelling reasons." *See United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020). Historically, only the BOP's

Director could bring a motion under this provision, but Section 603(b) of the First Step Act—titled "[i]ncreasing the use and transparency of compassionate release"—removed the BOP from this gatekeeper role and amended § 3582(c)(1)(A). *Jones*, 980 F.3d at 1104-05 (citing First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239). A defendant may now bring a motion for compassionate release on his own behalf after 1) exhausting the BOP's administrative process, or 2) thirty days have passed from the warden's receipt of a request for release from the defendant—whichever is earlier. *Id.* at 1105.

Before granting compassionate release pursuant to § 3582(c)(1)(A), a court must conduct the following "'three-step inquiry:'" the court must 1) "'find' that 'extraordinary and compelling reasons warrant a sentence reduction,'" 2) "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission,'" and 3) "'consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a).'" *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quoting *Jones*, 980 F.3d at 1101). The Sixth Circuit has held that the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13 is not an applicable policy statement for compassionate release motions brought directly by defendants. *Id.* at 519. Thus, in such cases, a court need not consider § 1B1.13 and has the discretion to define "extraordinary and compelling." *Id.* at 519-20.

### A.  Exhaustion of Administrative Remedies

The government concedes that Defendant has satisfied the exhaustion requirement with regard to his first ground for relief (his health concerns in light of the pandemic) but argues that he has not done so with regard to his second ground for relief

(the sentence disparity that has resulted from the Presidential commutation of the sentence of Mr. Kilpatrick).

The Sixth Circuit Court of Appeals has held that the exhaustion requirement in § 3582(c)(1)(A) is mandatory, *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020), but it has not addressed the issue of whether this requirement includes issue exhaustion. Courts that have addressed this issue have come to different conclusions. *Compare United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021) (holding issue exhaustion is required under § 3582(c)(1)(A)) *with United States v. Torres*, 464 F. Supp. 3d 651, 655 (S.D.N.Y. 2020) (holding issue exhaustion is not required).

The Court is persuaded by the reasoning of the courts which have held § 3582(c)(1)(A) does not require issue exhaustion. First, the statutory text does not contain an issue exhaustion requirement. *See United States v. Williams*, 473 F. Supp. 3d 772, 775 (E.D. Mich. 2020) (noting that issue exhaustion "is not mandated in any plain terms of the statute"). And, second, the Supreme Court has cautioned courts against imposing issue exhaustion requirements, especially where there is no adversarial administrative proceeding. *See Sims v. Apfel*, 530 U.S. 103, 109-10 (2000). Cases with a compassionate release request made to the BOP are within this category. *See United States v. Brown*, 457 F. Supp. 3d 691, 697 (S.D. Iowa 2020) (holding issue exhaustion is not required because "§ 3582 contains no such requirement and BOP compassionate release requests are not adversarial proceedings"). And while there is a BOP regulation requiring an inmate to detail the circumstances warranting compassionate release in an administrative request, 28 C.F.R. § 571.61(a)(1), that regulation has not been updated since passage of the First Step Act—similar to the Sentencing Commission's policy

4

statement which the Sixth Circuit has held is not applicable to motions for compassionate release filed by defendants on their own behalf. *See Torres*, 464 F. Supp. 3d at 656.

And even if imposing an issue exhaustion requirement may be appropriate where the defendant files an administrative request on one ground and then brings a motion on an unrelated ground, *see Williams*, 987 F.3d at 704, that is not the type of case here. Rather, Defendant described one set of circumstances he felt were extraordinary and compelling in his administrative request and now relies on those same circumstances in addition to another, which has arisen more recently, in his motion. *See Williams*, 473 F. Supp. 3d at 775. Therefore, the Court will consider Defendant's motion in its entirety.

### B.    Extraordinary and Compelling Reasons

The government argues that Defendant's health concerns do not rise to the level of extraordinary and compelling reasons. The government further argues it would be inappropriate to consider the commutation of Mr. Kilpatrick's sentence as an extraordinary and compelling reason warranting Defendant's release.

While the government discusses each of Defendant's arguments separately, the Court finds that a combination of these circumstances constitutes extraordinary and compelling reasons here. *See, e.g.*, *United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020) (noting it was within the district court's "sound discretion" to consider whether a number of factors "in isolation or combination" justify a sentence reduction).

First, Defendant has hypertension, high cholesterol, and reduced lung capacity due to bullet wounds Defendant suffered when he was a victim of an attempted carjacking and robbery. (*See* ECF No. 674-2, PgID 18606, 18611; ECF No. 680-1.) The CDC has identified hypertension as a condition that can possibly make an individual more likely to

get severely ill from COVID-19.  *See* People with Underlying Medical Conditions, Centers for   Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html; *see also Elias*, 984 F.3d at 521 ("Relying on official guidelines from the CDC is a common practice in assessing compassionate-release motions.").  And while it is unclear what impact his lung issues have on his risk for severe illness from the virus, the record establishes Defendant had a surgical procedure in 1998 which left him with only 65% of his lung capacity.  (*See* ECF No. 681-1.)

Second, Defendant now faces the prospect of a period of incarceration much longer than a more culpable co-defendant.  At the time of sentencing, the Court noted there were "serious differences" between Defendant's conduct and that of Mr. Kilpatrick. (ECF No. 493, PgID 16285.)  More specifically, Defendant was not an elected official and had been charged with and convicted of a substantially smaller number of charges.  (*Id.*) The Court therefore concluded that Defendant deserved a shorter sentence than Mr. Kilpatrick and ultimately sentenced Defendant to a term of imprisonment 75% as long as Mr. Kilpatrick's sentence.  That Defendant now faces a period of incarceration more than twice as long as the time Mr. Kilpatrick served is both extraordinary and compelling.  *See United States v. Sapp*, No. 14-cr-20520, 2020 U.S. Dist. LEXIS 16491, at *5 (E.D. Mich. Jan. 31, 2020) (defining "extraordinary as beyond what is usual, customary, regular, or common" and "a compelling reason as one so great that irreparable harm or injustice would result if the relief is not granted") (internal quotation marks and citation omitted).

The government argues that avoiding unwarranted sentence disparities, one of the § 3553(a) factors, should not be part of this step of the analysis and that taking this into

6

account would contravene the interest in finality of sentences. The Sixth Circuit has held, however, consistent with all other circuit courts that have addressed this issue, that district courts have "full discretion" to define extraordinary and compelling reasons. *See Jones*, 980 F.3d at 1109; *see also Brooker*, 976 F.3d at 237 (noting that "a district court's discretion in this area—as in all sentencing matters—is broad"). The only statutory limit on what a court may consider to be extraordinary and compelling is that rehabilitation alone is not sufficient. *See* 28 U.S.C. § 994(t). That particular circumstances may also factor into the Court's analysis under § 3553(a) has no bearing on whether they can be considered extraordinary and compelling. And, here, the disparity only arose recently due to the unique circumstance of a co-defendant being granted a Presidential commutation.

While the finality of sentences is an important principle, the compassionate release provision of § 3582(c) "represents Congress's judgment that the generic interest in finality must give way in certain individual cases and authorizes judges to implement that judgment." *See United States v. McCoy*, 981 F.3d 271, 288 (4th Cir. 2020) (internal quotation marks and citation omitted). The Court finds this to be an appropriate case in which to do so. Not only has Defendant served a slightly longer term of imprisonment than a more culpable co-defendant, but his motion comes during an unprecedented global pandemic and Defendant has an increased vulnerability to the virus.[1] In sum, the Court

---

[1] The Court notes that throughout the course of the pandemic, Defendant has been serving his sentence at FCI Elkton, which was particularly hard hit by the virus. *See generally United States v. Jenkins*, No. 16-cr-20229, 2020 U.S. Dist. LEXIS 146660, at *12-13 (E.D. Mich. Aug. 14, 2020).

finds there are extraordinary and compelling reasons warranting a sentence reduction in this case.

### C. Sentencing Factors

The government argues that the § 3553(a) factors weigh against granting Defendant the relief he seeks. Under § 3582(c)(1)(A), the Court must consider the sentencing factors set forth in § 3553(a) to the extent that they are applicable. These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, protection of the public, the need to avoid unwarranted sentence disparities, and the need to provide restitution to any victims of the offense. *See* § 3553(a).

The government makes a forceful and impassioned argument as to why the § 3553(a) factors do not support compassionate release. Relying heavily on the Court's comments at the October 2013 sentencing hearing, the government spends fully a third of its brief attacking Defendant for his criminal activities. While the Court does not disavow the remarks and analysis articulated at the original sentencing, consideration of the statutory factors leads to a different conclusion today.

The nature and circumstances of the underlying offenses remain serious, even devastating. Public corruption corrodes the foundation of our democracy, and the environment of intimidation and extortion in Detroit created by Mr. Kilpatrick and Defendant undermined the foundation and hope for the success of many businesses, including those which were minority owned. But despite the government's argument that Defendant was and still is a man of violence (based primarily on incidents which occurred

8

decades ago), his crimes here were financial, not physical and not fiduciary. And while the Court noted at the time of sentencing that Defendant had only received "raps on the knuckles" for his prior criminal conduct, (ECF No. 493, PgID 16284), he has now been incarcerated for a significant period of time—eight years. During this time period he has not displayed the hotheadedness he has in the past, and he has taken several positive steps toward his rehabilitation. He has not received any disciplinary tickets,[2] has been employed within the prison system, and has completed almost four hundred hours of classes and workshops to help him prepare for a productive life following release. (*See* ECF No. 674-7.) Defendant has also served as a mentor to other inmates. (ECF No. 674-8.) Thus, the Court finds that the time Defendant has served to date is sufficient to promote respect for the law, provide just punishment for the offense, and promote deterrence to others considering similar conduct. For those same reasons, Defendant's continued incarceration is not necessary for protection of the public. And his release will also allow him to begin paying the restitution imposed in this case.

Finally, with respect to avoiding unwarranted disparities between similarly situated individuals guilty of similar conduct, Mr. Kilpatrick's release undermines the balance the Court attempted to achieve at sentencing. Defendant was not an elected official and took no oath to serve the people of any constituency. He was a single-minded crony of the mayor's, whose only apparent goal was to enrich himself at others' expense. He achieved that goal through threats and intimidation, primarily focused on the business expectations of his targets. But he was not the driver of the bus; that was Mr. Kilpatrick, where the

---

[2] It appears there was one minor incident related to telephone privileges during Defendant's first few days in custody.

power resided. Defendant was the enforcer and beneficiary of the pay to play policy, but he was not the engine. It would be inequitable to require Defendant to complete the lengthy sentence originally imposed while the more culpable co-defendant, who initially received an even lengthier sentence, has been released. In sum, the Court finds that the § 3553(a) factors, as a whole, weigh in favor of compassionate release in this case.[3]

### III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's motion for a sentence reduction under § 3582(c)(1)(A) is GRANTED. The custodial portion of Defendant's sentence is reduced to time served.

IT IS FURTHER ORDERED that unless Defendant has been in a segregated special unit for high-risk prisoners for more than 14 days where no inmate has tested positive or shown symptoms of COVID-19 within the past 14 days, Defendant shall self-quarantine within his home for 14 days upon his release.

Defendant's original sentence remains unchanged in all other respects.

SO ORDERED.

        <u>s/Nancy G. Edmunds</u>
        Nancy G. Edmunds
        United States District Judge

Dated: April 29, 2021

---

[3] The government states that if the Court grants Defendant's motion, it should stay its order pending any appeal by the government to the Sixth Circuit. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). Here, the government has not attempted to make this showing. Nor does the Court find that a balance of the relevant factors weighs in favor of a stay. *See id.* at 434. Therefore, the Court denies this request without prejudice.

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 29, 2021, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager
