UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff-Respondent,

v.

BOBBY W. FERGUSON (D-2),

        Defendant-Petitioner.

                                                               /

Case No. 10-20403

Honorable Nancy G. Edmunds

## **MOTION FOR RELIEF FROM JUDGMENT**

      **NOW COMES,** Defendant, Bobby Ferguson ("Ferguson"), acting pro-se, and pursuant to Rule 60(b)(6) moves the Court for Relief of the Judgment that denied his Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. Section 2255, without deciding his claim that appellate counsel rendered ineffective assistance by failing to argue the improper calculation of the amount of restitution. In support, the following is respectfully submitted.

**I. Procedural History and Facts:**

      On March 11, 2013, a jury convicted Defendant Bobby W. Ferguson ("Ferguson") of nine of the eleven counts in which he was charged: one count of RICO conspiracy, 18 U.S.C. § 1962(d); six counts of extortion, 18 U.S.C. § 1951; one count of attempted extortion, 18 U.S.C. § 1951; and one count of bribery, 18 U.S.C. § 666(a). **(ECF No. 277)**. The Court sentenced Ferguson to be imprisoned for a term of 252 months. **(ECF No. 519).** Ferguson was also ordered to pay restitution to the City of Detroit's Water & Sewerage Department (**"DWSD"**) in the amount of **$6,284,000.00,** jointly and severally with his codefendant, Kwame Kilpatrick ("Kilpatrick"), but Kilpatrick's original amount of restitution was **$4,584,423.00**, a difference of **$1,699,577.00 (ECF No. 277. @ Pg. ID 16479).** The difference between the amounts of Ferguson and Kilpatrick's restitution is due to the Court's reliance on the amount of profits they made separately, as opposed to the actual loss to the City of Detroit. **See United States v.**

**Kilpatrick, 798 F.3d 365, 388-91 (CA 6, 2015).** The Sixth Circuit affirmed Ferguson's and Kilpatrick's convictions and sentence, and only reversed the Court's restitution award against Kilpatrick because Ferguson's appellate counsel failed to raise the issue on appeal. **Id.** On remand, the Court ordered Kilpatrick to pay restitution to DWSD in the amount of **$1,520,653.50. see United States v. Kilpatrick, No. 10-20403; 2017 U.S. Dist. LEXIS 140562 at *1 (E.D. Mich. Aug. 31, 2017).** The Court entered an amended judgment reflecting this award and a new total restitution obligation of **$1,716,057.11.** (Case No. 10-20403, ECF No. 617). All other aspects of Kilpatrick's judgment remained the same. **Id.**

On November 11, 2015, Ferguson petitioned the United States Supreme Court for a writ of certiorari. **(ECF No. 572).** On December 18, 2015, the Supreme Court denied Ferguson's petition. (**ECF No. 575**). Ferguson timely filed a motion to vacate his sentence under 28 U.S.C. § 2255. **(ECF No. 585).** The Government filed a response, and Ferguson filed a reply. **(ECF Nos. 594; 596; 597).** On February 27, 2018, the Court entered an Order Denying Ferguson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. **(ECF No. 624)**. On March 29, 2018, Ferguson filed a Motion for Reconsideration arguing the Court failed to liberally construe his 2255 motion and **misapprehended his claims related to jury instructions and sentencing errors, including the improper calculation of amount of restitution. (EFC No. 627 @ Pg. ID 17858-17859). (emphasis added).** In its September 20, 2018 Order, the Court admitted "Defendant [was] correct that the Court did not analyze his jury instruction claim as an ineffective assistance of counsel claim …, " [so] "the Court … consider[ed] it." **(ECF No. 634).** The Court denied that claim, but failed to rule on Ferguson's issue "that the Court misapprehended his claim that appellate counsel was ineffective for failing to raise sentencing guidelines errors on appeal … [including] …, this Court's error in using the amount allegedly gained .. to calculate the [**$6,284,000.00] amount of restitution … [Ferguson owes]** to DWSD. (Dkt. # 627, Pg ID 17858). **(ECF No. 634 @ Pg. ID 17891).** Rather than consider this claim, the Court held "**that Defendant merely re-hashes the same argument** that he already

2

raised in his 2255 motion and that this Court already considered and rejected in its **February 27, 2018 Order. See Dkt. # 624, Pg ID 17834-36.**" **Id. (emphasis added).** A fair reading of the Court's Order denying the 2255 motion does not support this conclusion. In fact, on October 15, 2028, Ferguson filed a Motion to Clarify the Order denying the Motion for Reconsideration under Rule 59(e). **(ECF No. 640)**. Ferguson argued the Court relied "on [its] calculation of the actual loss [to] determine the total amount of restitution awarded to DWSD." **Id. @ Pg. ID 18258.** On April 3, 2019, the Court denied Ferguson Motion for Clarification without comment on Ferguson's claim that appellate counsel rendered ineffective assistance by failing to argue the miscalculation of the **$6,284,000.00, awarded for restitution.**

On April 29, 2021, the Court granted Ferguson compassionate release and reduced the custodial portion of his sentence to time served. **(ECF No. 682)**. That order did not alter either the three-year term of supervised release imposed at the time of sentencing or **the Court's restitution order**. **see ECF No. 693 @ pg. 1.** Ferguson completed his supervised release without incident on April 29, 2024. His restitution balance was cited as **$2,628,374.00. Id. @ pg. 3-4.** Ferguson submits that if the miscalculation of his restitution award were corrected, his debt to DWSD would be satisfied, and he would not be subject to the harassment by the United States Attorney Office ("USAO") to provide financial information and/or a deposition for restitution that as a matter or law, he does not owe.

## II. Standard of Review:

**Rule 60(b) provides in relevant part:**

"On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ... , misrepresentation, or misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a **reasonable time,** and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken." **Id.**

In **Gonzalez v. Crosby, 545 U.S. 524 (2005)**, the Supreme Court held that a Rule 60(b)(6) motion is not to be treated as a successive habeas petition if it does not assert, or reassert, claims of error in the movant's state conviction, but only challenges the District Court's failure to reach the merits of a claim presented for habeas review. In such cases, the Court held, the District Court can decide the issue without precertification by the Court of Appeals pursuant to §2244(b)(3). **Gonzalez, supra. @ 524.**

The rationale in **Gonzalez**, was applied to federal 2255 cases by the Sixth Circuit in **In re Nailor, 487 F.3d 1018 (CA 6, 2007).** The court held that the analysis from *Gonzalez*—which involved a state habeas petition under Section 2254 —applies to a federal prisoner's 2255 motion. Accordingly, a Rule 60(b) motion is a **second or successive 2255 motion** and must be transferred for authorization if it (1) **Seeks to add a new ground for relief** (i.e., a new claim); and (2) **Attacks the federal court's previous resolution of a claim on the merits.** However**,** the court affirmed the core *Gonzalez* **principle** that a Rule 60(b) motion is a **"true" Rule 60(b) motion** (and not successive) if it **attacks a defect in the integrity of the federal habeas proceedings,** not the substance of the underlying conviction or sentence. This includes procedural defects like a misapplication of the statute of limitations. **In re Nailor, supra.**

### (i). Timeliness & Extraordinary Circumstances:

In **Gonzalez**, the Court expressly tied the "**reasonable time**" requirement to the one-year ceiling for all of the grounds listed in **Sections 60(b)(1)-(5)**. **Gonzalez, supra. @ 528.** Section (b)(6), has no expressed statutory ceiling, but the filing still must satisfy the "**reasonable time**" requirement of **Section 60(c)(1)**. Courts treat Section (b)(6) as a **"catch-all"** that permits relief **outside the one-year rule** provided the movant shows **extraordinary circumstances to excuse any delay. see Gonzalez, supra @ 532-33; Johnson v. Bell, 605 F.3d 333, 337 (CA 6, 2010).**

4

**(ii). Miscarriage of Justice:**

The Sixth Circuit in **Johnson v. Bell,** expressly recognized that a Rule 60(b)(6) motion can be entertained when a sentencing error, **including a miscalculation of restitution,** produces a **"gross miscarriage of justice."** **Id. @ 333, 337.** In **United States v. Spence,** the Sixth Circuit held that an over-calculated restitution amount, which rendered the overall sentence longer than authorized, was a basis for a Rule 60(b)(6) motion. **Spence, 994 F.3d 130 (CA 6, 2021).** These cases have noted that an **inflated restitution amount** can increase the total term of imprisonment (e.g., a "restortation-period" credit) or impose an impossible large **financial burden,** thereby affecting the **substantive** sentence. In addition, the Court noted that **excessive restitution** can make **compliance** impossible, leading to **civil contempt,** additional incarceration, or forfeiture of assets that effectively extend the **punitive component of the sentence. Id.** In **Penney v. United States, 870 F.3d 459, 467 (CA 6, 2017)**, the Sixth Circuit emphasized that the exception to the one year limitation is **"rooted in the integrity of the proceedings**, not in the disagreement with the judgment's merits."

**III. Application:**

There is clearly a "**miscarriage of justice**" issue in this matter. First, there is no way to **reconcile** the fact that **Kilpatrick's restitution** calculation was held by the Sixth Circuit to be improperly calculated because the Court used Kilpatrick projected profits to determine the amount of restitution instead of actual losses to the DWSD, yet Feguson's restitution award of **$6,284,000.00** can still be deemed as correct despite the fact that the same **erroneous method of calculation** was used to determine his restitution award. In fact, at the post-trial hearing the prosecution conceded to not having actual figures for what the government used to enhance the defendant's sentencing guidelines and their Joint and Several Restitution Judgment. **( Doc # 16685, AUSA LInda Aouate);(Doc # 73-2, @ p. 28).** On November 2, 2016, AUSA Michael Bullotta confirmed Ms. Aouate statement and the Six Circuit ruling, when he conceded that the government could not, with sufficient precision, correlate " **Actual Loss " to DWSD in this case.**

5

**( ECF No. 581 @ Pg. ID 171360); see also Kilpatrick, supra. 798 F.3d @ 388-92 ("The government essentially conceded that its $4.5 million figure did not represent the city's "actual loss."  "The government claimed the "actual loss" would be "inherently difficult to precisely qualify," and the court recognized it lacked any data regarding what the DWSD would have paid to other contractors … It appears that the court, like the district court in United States v. Navarrete , 667 F.3d 886, 891 (7th Cir. 2012), "threw up [its] hands too soon.")**

Moreover, the record demonstrates that this **excessive restitution** has subjected Ferguson to harassment, potential contempt of court. The Government's recent filing against Ferguson based on the excessive restitution illustrates this fact.  On August 27, 2025, the Government filed a Motion for Order Requiring Examination of Judgment Debtor. **(ECF No. 717).** Therein the Government states that:

(1) A Judgment was entered by this Court on January 15, 2014, in favor of the United States and against the judgment debtor, Bobby Ferguson in the amount of **$6,284,000.00,** without interest ("Judgment"). ECF No. 519, at PageID.16479; (2); that "the Court ordered Ferguson, to pay restitution at a rate and schedule recommended by the probation department and approved by the Court during his period of supervised release. Id., at PageID.16478. (3) that Ferguson's term of supervised release has expired and since the expiration of Ferguson's supervision on April 28, 2024, he has paid approximately **$100.00 a month towards his outstanding restitution balance of $2,612,655.48.** (4) that on March 3, 2025, and April 8, 2025, the United States requested Ferguson provide updated financial information. No response was received. (5) that on May 16, 2025, the United States sent a third request to Ferguson to complete financial disclosures and that Ferguson was also notified to appear at the United States Attorney's Office f**or an in-person examination of his financial circumstances on August 27, 2025, at 10:00 am.** (6) that Ferguson did not provide the requested information, and from May 29, 2025, to August 25, 2025, attempted to quash the United States' subpoena. See ECF No. 709, 712-14. (7) that on August 26, 2025, the Court denied Ferguson's Motions Regarding Restitution [702, 703] and Motion to Quash Subpoena. ECF No. 715; (8) that. on August 26, 2025, after hours, the undersigned received a phone call from Ferguson's counsel requesting a one-week continuance on the basis of counsel's scheduling conflict but due to the late notice and coordinating of multiple schedules, that request was denied and Ferguson's counsel has entered an appearance on the docket. ECF No. 716. (9) **that on August 27, 2025, Ferguson checked in at the front desk of the USAO shortly after 9:00 am and without explanation left prior to 10:00 am. see ECF No. 717 @ Pg. ID 19046-48, para. 1-9. (emphasis added).**

Ferguson opposed and rebutted each of these allegations. **(ECF No. 718 @ pp. 1-3)**.  In

6

particular, he argued that "what occurred on August 27th when [he] arrived at the USAO at 9 am for the deposition scheduled to begin at 10 am support[ed] [his] claim that the government has acted in bad faith. Ferguson provided proof that he waited at the front desk while **the receptionist checked on the status of the matter.** The receptionist never received a response from any **USAO staff or AUSA Nathan,** who based on her statements was there. **(ECF No. 717 @ ID 19046-48, para. 1-9 ).** The receptionist "**time-stamped**" the "**Deposition Letter**" sent to Ferguson by **AUSA Nathan** to **ensure** that Ferguson could prove he appeared. Therefore, the explanation provided by the AUSA Nathan that "[**o**]**n August 27, 2025, Ferguson checked in at the front desk of the United States Attorney's Office shortly after 9:00 am and without explanation left prior to 10:00 am is a disingenuous,** intentional, **misstatement** of facts designed to **characterize Ferguson as "uncompliant"** and to **justify** the USAO's recent request for a **court-ordered deposition. Id.** Ferguson opines that had he not received the "**time-stamp" on his letter** to verify he showed-up on August 27th, the Government could claim he was a no show and move the Court for **contempt charges.**

The Government concludes by requesting a post-judgment debtor examination and requested documents at Exhibit A for purposes of enforcing the Court's Judgment and **to assess Ferguson's assets and ability to pay the remaining unpaid restitution,** and states that upon completion of the judgment debtor examination, the United States intends to seek a Revised Payment Order concerning Ferguson's restitution obligation. **Id.** However**, the government omits** the fact that it arbitrarily changed the monthly rate of Ferguson's restitution payments from **$100 to $500 without the Court's approval or involvement.** The Court acknowledged this action occurred. **see (ECF No. 715 @ Pg. ID 19041).** Ferguson's response to the Court's finding on this point is still pending. **(ECF No. 718 @ pp. 1-3)** Collectively, these facts illustrate why the **unresolved error** in calculating Ferguson's restitution amount constitutes a gross **"miscarriage of justice."**

**(iv). Relief Requested:**

As noted above, Ferguson Rule 60(b) motion challenges the **integrity of his 2255 proceedings** as the Court failed to reach the merits of his 2255 claim that his **appellate counsel was ineffective** for failing to raise the same sentencing guidelines errors on appeal that Ferguson's codefendant, Kilpatrick raised regarding the Court's use of the amount of money allegedly gained by the defendants to calculate the total **amount of restitution awarded** to DWSD. **see Kilpatrick, supra. @ 388-91 (CA 6, 2015); (ECF No. 634 @ Pg. ID 17891).** The judgment denying Ferguson's 2255 motion did not decide the merits of this IAC issue raised in his 2255 motion, argued in his reply to the Government's response to that motion and his motion for reconsideration, then addressed in his motion for clarification of the Court's denial of his reconsideration motion. **see (ECF No. 585 @ Pg. ID 17214-15; ECF No. 596 @ Pg. ID 17337-38; ECF No. 627 @ Pg. ID 17858-59; ECF 640 @ Pg. ID 18258).** Accordingly, the integrity of the 2255 proceeding is at issue and reopening the proceedings so the Court can rule on the merits of Ferguson's IAC claim is warranted.

## C O N C L U S I O N

**WHEREFORE,** for the reasons above, Defendant respectfully request the Court grant his Rule 60(b)(6) motion for Relief From Judgment and reopen the 2255 proceedings to decide whether Defendant's appellate counsel rendered ineffective assistance of counsel by failing to argue the Court erred in calculating the amount of restitution awarded to the DWSD.

Date: November 6, 2025

/s/ Bobby Ferguson
Defendant/Pro-se
18944 Bretton Drive
Detroit, MI. 48223